UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 09- 892(AET) |
| v. | : | 18 U.S.C. § 1349 |
| RONALD ALLEN | : | INDICTMENT |

The Grand Jury for the District of New Jersey charges:

**I. Defendants, Co-Conspirators and Entities**

1. At all times relevant to this Indictment:

a.. Defendant RONALD ALLEN primarily resided at 11738 Magnolia Boulevard, Apt. 2, Valley Village, California 91607. ALLEN owned and operated RRG Business Development Corp., located at 6444 Bellingham Avenue, North Hollywood, California, 91606, and was listed as the President of IBA Limited USA Incorporated ("IBA").

b. Co-Conspirator Gil Morgan ("CC-GM") primarily resided in Spring, Texas. CC-GM owned and operated: G. Morgan Insurance Agency, C.T. Group Inc., and Lucent Dynamics LP. CC-GM also conducted business through C&S Insurance Services, Inc., which was owned and operated by CC-GM's wife KM.

c. Prime Insurance Syndicate ("Prime"), located in Salt Lake City, Utah, is an insurance carrier providing insurance coverage to a variety of business and individuals. Prime, which only issues policies through brokers or agents with which it has a written contract, never had a contract or agreement with G. Morgan Insurance Agency, C.T. Group Inc., C&S Insurance Services, Inc., Lucent Dynamics, RRG Business Development Corp., IBA, Defendant

RONALD ALLEN or CC-GM, in any capacity, for Defendant ALLEN or CC-GM to sell Prime insurance policies. Prime was used by Defendant ALLEN, CC-GM, and others, to effect the scheme to defraud in the manner set forth herein.

d. Universal Pacific Insurance Co., Ltd. ("UPIC") was a purported insurance company on behalf of which Defendant ALLEN and CC-GM sold insurance policies. CC-GM sold UPIC policies to Insureds with ALLEN's signature as the authorized UPIC representative, using three different addresses, including but not limited to ALLEN's home address: 11738 Magnolia Boulevard, North Hollywood, California, 91607. UPIC was not authorized to sell insurance policies in any state in the United States. UPIC was used by Defendant ALLEN, and others, to effect the scheme to defraud in the manner set forth herein.

e. Aconorate operated as an insurance brokerage agency in New Jersey, Pennsylvania and New York. Aconorate sold insurance to businesses, which it obtained from other insurance brokers, like CC-GM, who purportedly had a contract to sell policies for insurance carriers. Defendant ALLEN, CC-GM and others used Aconorate to defraud businesses who purchased insurance policies (hereinafter "the Insureds"), in the manner set forth herein.

## II. The Conspiracy

2. From at least as early as in or around March 2004 until at least as late as in or around December 2004, in Atlantic County, in the District of New Jersey, and elsewhere, the defendant,

RONALD ALLEN,

did knowingly and intentionally conspire and agree with CC-GM and others to devise a scheme and artifice to defraud Insureds, and to obtain money and property, by means of false and

fraudulent pretenses, representations and promises, which scheme and artifice was in substance as set forth in paragraphs 3-15 below, and for the purpose of effectuating such scheme and artifice below:

a. placed and caused to be placed in a post office and authorized depository of mail, and causing to be delivered thereon, certain mail matter, to be sent and delivered by the United States Postal Service, and by any private and commercial interstate carrier, contrary to Title 18, United States Code, Section 1341; and

b. transmitted and caused to be transmitted by means of using interstate and foreign wire communications any writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice to defraud, contrary to Title 18, United States Code, Section 1343.

3. The object of the conspiracy was to defraud the Insureds out of money, funds, and assets by selling the Insureds false and fraudulent insurance policies knowing that such policies were false and fraudulent, and not written, endorsed or backed by an insurance carrier, collecting premiums as payment for such false and fraudulent policies, and using such premium payments for their own personal use.

**Manner And Means Of The Conspiracy**

**A. The Sale Of False And Fraudulent Prime And UPIC Policies**

4. It was part of the conspiracy that ALLEN met CC-GM and others in Las Vegas, Nevada in early, 2004, to develop a scheme to defraud businesses out of insurance premiums by selling false and fraudulent UPIC and Prime policies to insurance brokers and businesses throughout the United States. ALLEN and CC-GM agreed that CC-GM would sell UPIC and

Prime policies, collect premiums, extract a percentage, and send the difference to ALLEN.

5. It was further part of the conspiracy that in or around April 2004, ALLEN incorporated or caused to be incorporated IBA, in California, to serve as the purported parent corporation of UPIC and Prime.

6. It was further part of the conspiracy that on or about May 12, 2004, BS, at the request and direction of ALLEN, sent an email to ALLEN and CC-GM, containing a letter: listing UPIC as a wholly owned subsidiary of IBA, Ltd., located in Guadalajara, Mexico and Los Angeles, California; installing CC-GM as an employee of UPIC; and granting CC-GM the authority to issue insurance policies on behalf of UPIC.

7. It was further part of the conspiracy that from in or around March 2004, CC-GM, or one of his business associates acting under the direction of CC-GM, with the knowledge and consent of Defendant ALLEN and others, began issuing false and fraudulent Prime and UPIC insurance policies.

a. In the case of UPIC, CC-GM, or one of his business associates acting under the direction of CC-GM, created bogus UPIC policies from a blank template, entered insured-specific information onto the policies, and provided these false and fraudulent policies to brokers and Insureds throughout the United States. CC-GM created these policies at the request of ALLEN, who had signed and provided to CC-GM a blank declaration page that CC-GM or one of his business associates scanned into the computer, listing one of three above mentioned UPIC addresses and also listing Defendant ALLEN's home address of 11738 Magnolia Blvd., as the place to contact regarding the filing of a claim.

b. In the case of Prime, no Prime policy was created. CC-GM or one of his business associates, with the knowledge and authorization of Defendant ALLEN, sent the customer only an insurance binder that outlined the dates of coverage and policy limits, and a quote sheet that outlined the policy cost.

8. It was further part of the conspiracy that after CC-GM explained to ALLEN that CC-GM needed a document authorizing CC-GM to sell Prime policies, Defendant ALLEN sent CC-GM an undated letter, signed by ALLEN, authorizing CC-GM to start binding coverage effective June 11, 2004, on behalf of Prime, even though ALLEN had no authority to authorize such coverage.

9. It was further part of the conspiracy that CC-GM, upon being notified by Prime in or around June 2004 to immediately cease and desist the unauthorized sale of Prime policies, sent correspondence to businesses to whom he had sold Prime policies, notifying them that: (a) their policy originally was bound through Prime under the approval of IBA, Ltd., the company purchasing Prime; (b) the purchase of Prime by IBA, Ltd. was not consummated; and (c) they could take advantage of the opportunity to switch their insurance to UPIC, which was a South American insurance company, or could receive a return of their premium.

10. It was further part of the conspiracy that CC-GM, or one of his business associates, acting under the direction of CC-GM, wired approximately $366,918.93 from in or around March, 2004 to December 2004, to ALLEN's RRG Business Development Corp. These monies represented premiums collected by CC-GM minus CC-GM's percentage, for the sale of false and fraudulent UPIC and Prime policies. For instance

a. On or about May 24, 2004, CC-GM wired $16,312.00 from CT Group, Inc., account number ******3285 located at Sterling Bank, Houston, Texas to ALLEN's RRG Business Development Corp., account number ******4386, which is located at Bank of America, North Hollywood, California, as partial payment for the insurance premiums associated with multiple false and fraudulent policies issued by CC-GM.

b. On or about August 17, 2004, CC-GM wired $10,400.00 from CT Group, Inc., account number ******3285 located at Sterling Bank, Houston, Texas to ALLEN's RRG Business Development Corp., account number ******4386, which is located at Bank of America, North Hollywood, California, as partial payment for the insurance premiums associated with multiple false and fraudulent policies issued by CC-GM.

c. On or about December 7, 2004, CC-GM wired $3,000.00 from CT Group, Inc., account number ******3285 located at Sterling Bank, Houston, Texas to ALLEN's RRG Business Development Corp., account number ******4386, which is located at Bank of America, North Hollywood, California, as partial payment for the insurance premiums associated with multiple false and fraudulent policies issued by CC-GM.

ALLEN collected these monies with the knowledge that: CC-GM was not authorized to sell Prime policies; UPIC was not licensed to be sold in the United States; and that these monies represented premiums for the sale of false and fraudulent UPIC and Prime policies.

**B. <u>The Sale Of False And Fraudulent Prime And UPIC Policies Via Aconorate</u>**

11. It was further part of the conspiracy that from in or around June, 2004, CC-GM began selling false and fraudulent insurance policies to Insureds in New Jersey, New York and Pennsylvania through Aconorate Insurance Agency purportedly on behalf of Prime and UPIC.

12. It was further part of the conspiracy that Aconorate would collect insurance premiums from the Insureds, extract a percentage for themselves, and issue checks payable to C&S Insurance Services, CT Group and Lucent Dynamics for CC-GM's portion of the premiums. CC-GM then would extract his commission and forward the ill-gotten proceeds to Defendant ALLEN.

13. It was further part of the conspiracy that from in or around June, 2004, CC-GM sold unauthorized Prime policies to Aconorate. CC-GM, upon being notified by Prime on or about June 17, 2004 that CC-GM must cease and desist selling unauthorized policies, informed Aconorate, and Aconorate asked CC-GM to find another carrier. Soon thereafter, CC-GM informed Aconorate that all previously issued Prime policies would now be issued by UPIC. Aconorate was notified by Prime on or about July 29, 2004 that CC-GM was not authorized to sell insurance policies on behalf of Prime.

14. It was further part of the conspiracy that on or about the dates set forth below, for the purpose of executing such scheme and artifice to defraud, CC-GM did transmit and cause to be transmitted by means of using interstate and foreign wire communications any writings, signs, signals, pictures and sounds, as follows:

a. On or about June 25, 2004, Aconorate faxed instructions to CC-GM, via interstate wire, giving authority to C& S Insurance Services, Inc., to withdraw from Aconorate's Sun National Bank account number ******1856, located in Hammonton, New Jersey, $16,347.38 and deposit this amount in C & S Insurance Services, Inc. Sterling Bank Account number *****3307, located in Houston, Texas. These monies represented a down payment on a false and fraudulent Prime general liability insurance policy sold to Buded, Inc., located in

Atlantic City, New Jersey, for the coverage period of July 1, 2004 through July 1, 2005. This transaction was consummated on or about June 29, 2004.

b. On or about June 30, 2004, Aconorate faxed instructions to CC-GM, via interstate wire, giving authority to C& S Insurance Services, Inc., to withdraw from Aconorate's Sun National Bank account number ******1856, located in Hammonton, New Jersey in the District of New Jersey, the amount of $8,206.88 and deposit this amount in C & S Insurance Services, Inc. Sterling Bank Account number *****3307, located in Houston, Texas. These monies represented a down payment on a false and fraudulent Prime general liability insurance policy sold to Cabana's & Martini Beach Restaurant, located in Cape May, New Jersey, for the coverage period of June 29, 2004 through June 29, 2005. This transaction was consummated on July 2, 2004.

c. On or about August 2, 2004, Aconorate faxed instructions to CC-GM, via interstate wire, giving authority to C& S Insurance Services, Inc. to withdraw from Aconorate's Sun National Bank account number ******1856, located in Hammonton, New Jersey in the District of New Jersey, the amount of $2,680.00 and deposit this amount in C & S Insurance Services, Inc. Sterling Bank Account number *****3307, located in Houston, Texas. These monies represented a down payment on a false and fraudulent Prime general liability insurance policy sold to El Charro, located in Atlantic City, New Jersey, for the coverage period of July 30, 2004 through July 30, 2005. This transaction was consummated on August 4, 2004.

15. It was further part of the conspiracy that on or about the dates set forth below, for the purpose of executing such scheme and artifice to defraud, CC-GM did place and cause to be placed in a post office and authorized depository for mail matter to be sent and delivered by the

United States Postal Service according to the directions thereon, the following mail matter:

a. On or about November 19, 2004, Aconorate mailed check number 4808, via the U.S. mails, to C.T. Group Inc., in the amount of $3,033.15 representing a monthly installment for a false and fraudulent Prime/UPIC general liability policy sold by Aconorate through Defendant ALLEN and CC-GM to Cabana's & Martini Beach Restaurant located in Cape May, New Jersey.

b. On or about November 24, 2004, Aconorate mailed check number 4822, via the U.S. mails, C.T. Group Inc., in the amount of $599.00 representing a monthly installment for a false and fraudulent Prime/UPIC general liability policy sold by Aconorate through Defendant Allen and CC-GM to Croctails Tavern located in Atlantic City, New Jersey.

In violation of Title 18, United States Code, Section 1349.

A TRUE BILL,

PAUL J. FISHMAN
United States Attorney

**United States District Court**
**District of New Jersey**

**UNITED STATES OF AMERICA**

**v.**

**RONALD ALLEN**

# INDICTMENT FOR

18 U.S.C. § 1349

**PAUL J. FISHMAN**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

JOHN J. HOFFMAN
*Assistant U.S. Attorney*
*Trenton, New Jersey*
*(609) 989-2190*